[No. 16806.  Department Two.  April 27, 1922.]

J. W. MASTERSON, *Appellant,* v. CHARLES HAISLETT *et al., Respondents.*[1]

PRINCIPAL AND AGENT (35)—AUTHORITY—COLLECTION OF DEBTS. Findings that a note and mortgage were paid in full to the holder's authorized agent are sustained, where it appears that for four years the holder had allowed the agent who negotiated the loan to collect interest and payments, without notice to the maker that he was not authorized to receive it, notwithstanding the agent appropriated and failed to account for the last payment after giving a receipt in full.

Appeal from a judgment of the superior court for Pacific county, Hewen, J., entered June 27, 1921, in favor of the defendants, in an action to foreclose a mortgage, tried to the court. Affirmed.

*Welsh & Welsh* and *E. S. Snelling,* for appellant.

*Sherwood & Mansfield,* for respondents.

HOLCOMB, J.—This action was commenced to foreclose a mortgage for the unpaid balance of $300 of principal, together with interest at the rate of ten per cent per annum from February 9, 1919, until paid, and for attorney's fees and costs.

The original debt, and the mortgage securing the same, was $400. The loan was negotiated by one P. W. Rhodes, a short time prior to February 9, 1914. The amount of the loan was delivered by appellant to Rhodes, who delivered it to respondents upon the ex-

[1]Reported in 206 Pac. 359.

ecution of the note and mortgage. Thereafter Rhodes caused the mortgage to be recorded in the records of real estate mortgages in the proper office in Pacific county. Immediately after the recording of the mortgage, the note and mortgage were delivered by Rhodes to appellant, and ever since that time appellant has been in possession of them. Interest was payable annually, and respondents paid interest to Rhodes on the note as follows: April 11, 1915, $40; May 9, 1916, $40; February 21, 1917, $40; February 9, 1918, $40, which interest payments were thereafter paid by Rhodes to appellant. On February 15, 1919, respondents paid to Rhodes $340 for which Rhodes gave them a receipt signed by himself individually, and not as agent. Of this sum Rhodes paid to appellant $140, forty dollars being for interest, and one hundred dollars for principal. Appellant never received any other or further sum of money on the note and mortgage. On February 15, 1920, respondents paid to Rhodes $110 and received from Rhodes his receipt reciting that it was in full payment of the mortgage dated February 9, 1914, on the premises described in the mortgage.

Respondents answered plaintiff's complaint, and admitted the receipt by them of the $400, and the execution by them of the note and mortgage as alleged in the complaint. They further alleged that Rhodes was the agent of appellant, and that they paid the note and mortgage in full to Rhodes, and prayed that plaintiff be compelled to satisfy the mortgage of record, and that the court award them a penalty in the sum of $25 because of the refusal of the appellant to satisfy the mortgage. Appellant replied, denying the material allegations of the affirmative answer of respondents, and denied that Rhodes was his agent, or that he was

ever authorized to receive the money on the note and mortgage for him.

The court entered judgment in favor of respondents, reciting that the mortgage indebtedness had been paid, that defendants were entitled to a release of the mortgage of record, and in addition thereto a penalty in the sum of $25 for failure to release the mortgage of record, and ordered the county auditor to cancel the mortgage of record.

Appellant assigns as error the recital in the decree that respondents had paid to appellant, through his authorized agent, the full amount of the indebtedness, and that the mortgage indebtedness was paid and respondents are entitled to a release and discharge of the mortgage. Various assignments are also made as to the admission in evidence by the trial court of certain papers purporting to be statements rendered by Rhodes to appellant.

The objections to the admission of the alleged statements by Rhodes to appellant we consider unimportant. The question to be determined is whether Rhodes was the agent of appellant or not. The evidence by appellant himself shows that Rhodes was handling money generally for appellant to be loaned upon real estate security, and that Rhodes systematically collected the moneys coming due upon the loans and in general settled with appellant. Appellant testified that Rhodes adopted a system of rendering monthly statements to appellant by mail or by hand. Appellant and respondents had never met until the day of the trial. Appellant gave respondents no notice that Rhodes was not authorized to collect moneys falling due upon the loan, for appellant, and to pay such moneys directly to appellant. For four years interest payments were made through Rhodes and paid by him to appellant. A part of the principal payment

which was made by respondents to Rhodes in 1919 was paid over to appellant. The remainder was appropriated by Rhodes. About two years before the maturity of this mortgage debt, appellant became dissatisfied with Rhodes, but permitted him to continue to make collections on loans and report. He did not discharge Rhodes. Under such a state of affairs the fault, if any, was with appellant, who put it in the power of Rhodes to defraud respondents, and not the fault of respondents. Rhodes was the agent of appellant, and not of respondents. At least he apparently possessed the status and authority of an agent to do the things he did. We recently decided a similar case in *Kraus v. Dowell, ante* p. 90, 204 Pac. 795, there holding that, under such circumstances, the loan broker was the agent of the mortgagee.

We consider the judgment correct and it is affirmed.

PARKER, C. J., HOVEY, MITCHELL, and MACKINTOSH, JJ., concur.