(Nos. 5379, 5412, 5413. March 20, 1930.)

GEORGE M. HARDING and EDNA W. HARDING, Husband and Wife, Appellants, v. HOME INVESTMENT AND SAVINGS COMPANY and METROPOLITAN LIFE INSURANCE COMPANY, Respondents.

[286 Pac. 920.]

Bothwell & Chapman, for Appellants.

S. T. Lowe, Walters, Parry & Thoman and J. R. Keenan, for Cross-appellant Home Investment & Savings Co.

68

S. T. Lowe, Walters, Parry & Thoman and J. R. Keenan, for Respondent Metropolitan Life Insurance Company.

GIVENS, C. J.—In 1922 the Hardings executed a note, secured by a mortgage on their land in Twin Falls county, to the Home Investment and Savings Company. The note and mortgage were immediately assigned to the Metropolitan Life Insurance Company.

The note was due April 1, 1927. Late in 1926, Gleed Miller, an officer of the Investment Company, went to the Hardings and represented to them that the note would soon be due and that he would like to arrange for its extension with the Insurance Company but that it would be necessary to sign the extension agreement at once, which they did. The evidence sustains the findings that the Hardings signed such extension papers conditionally. Harding was considering securing a loan from another source and he did not want to obligate himself to the Insurance Company at that time. Miller represented, however, as a reason for requiring the immediate execution of the papers that considerable investigating would have to be done by the Insurance Company before the extension would be approved and that he would not record the extension until authorized by Harding.

The papers executed included, in addition to the extension agreement, an interest note, a commission note and a commission mortgage. The extension agreement provided that the original note for $11,500 should be extended for ten years together with the mortgage securing it. The interest note, executed in favor of the Insurance Company, covered the interest due for the ensuing ten years. The commission note, secured by a second mortgage, was given to the Investment Company for its services in obtaining the extension.

The extension agreement and mortgages, under direction from the Insurance Company, were recorded by the Invest-

ment Company without authorization from Harding. Subsequently he determined to pay off the original mortgage when it fell due on April 1, 1927, and made a formal tender in accordance with the provisions of C. S., sec. 8049. The tender was conditioned on the release of both the Insurance Company mortgage and the $1,150 mortgage held by the Investment Company. The Insurance Company was willing to release its own mortgage but claimed that it had no authority to compel the release by the Investment Company of the mortgage held by the latter.

Appellants contend that the Investment Company acted as agent for the Insurance Company in the negotiations leading up to the extension agreement and consequently the Insurance Company could compel the cancelation of the Investment Company mortgage.

Respondents deny such agency, contending that the Investment Company was agent for the Hardings, and also that the tender, being conditional, was void.

The court found that the commission mortgage had been recorded without authorization and decreed its cancelation. The court also found that the extension agreement had been recorded without authority but the $11,500 mortgage which it covered was ordered foreclosed because of the insufficiency of the tender.

The invalidity of the tender was based on the court's finding that there was no agency relationship between the Insurance Company and the Investment Company with regard to the matters here involved, and its conclusion therefrom that the Insurance Company was without power to satisfy the conditions imposed by the tender.

Out of this situation there arose the following proceedings: The Hardings brought suit against the Insurance Company and the Investment Company to cancel the extension agreement and the commission mortgage and to permit them to pay the original mortgage with interest only to the date of the tender referred to herein. In this connection, the Insurance Company and the Investment Company cross-complained and counterclaimed, seeking fore-

closure of their respective mortgages. The Insurance Company also brought an independent action seeking foreclosure of its mortgage. This latter action was dismissed on the ground that there was another proceeding pending involving the same issue. The Hardings have appealed from the judgment foreclosing the extended mortgage. The Insurance Company has appealed from the judgment dismissing its independent suit but on oral argument it admitted that its only purpose in bringing said suit was to fully protect its rights, and that the same issue was involved in the action brought by the Hardings. The Investment Company has appealed from the judgment refusing foreclosure of its so-called commission mortgage. All the issues may be and are settled by this one opinion.

 The finding of the trial court that the extension agreement and commission mortgage were recorded without authorization is sustained by the evidence. If these papers were recorded at the instance of the Insurance Company or by one authorized to act for and bind it in this respect, their release could likewise have been ordered by the Insurance Company, and the insistence of the Hardings on such a release, before they would pay the mortgage, would not have vitiated the tender.

The fact of agency is to be determined from all the circumstances of the case. We are here concerned only with the authority as agent for the Insurance Company of the Investment Company to negotiate and record the extension agreement and the accompanying notes and mortgages. After the original mortgage was transferred to the Insurance Company, notices of interest due were sent to the Hardings from the Salt Lake office of the Investment Company and they continued to make their interest payment to the Investment Company. All correspondence in regard to the mortgage was carried on with the Investment Company. When the time came for extending the term of the mortgage all the negotiations were carried on with the Investment Company. Its agent secured the papers, had them executed and forwarded them to the Insurance Com-

pany, and at the request of the Insurance Company recorded them. The Insurance Company carried on all its correspondence with the Investment Company in regard to the extension. A paragraph from one of its letters—that of February 2, 1927—is significant as to the true relationship between the two companies—the instruction of a principal to its agent:

"In this case you may handle the matter by taking an extension agreement instead of new papers. This is our general rule and should be followed."

Conceding that in general the Investment Company was not the agent for the Insurance Company in securing and transmitting loans, but did so as an independent concern or as agent for the borrower, this letter would be controlling with regard to this particular transaction, and the use of the word "taking" would negative the idea that the Investment Company was acting as the agent of the borrower. In that event it would have been instructed to *give* an extension agreement to the Insurance Company. It could *take* the extension agreement only for the Insurance Company, not for the Hardings.

We believe that all the evidence compels the conclusion that an agency existed for the purpose of the renewal negotiations. (*Stockton v. Watson,* 101 Fed. 490; *McLean v. Ficke,* 94 Iowa, 283, 62 N. W. 753; *Larson v. Lombard,* 51 Minn. 141, 53 N. W. 179; *Security State Bank v. Soule,* 70 Mont. 300, 225 Pac. 127; *Jensen v. Lewis Inv. Co.,* 39 Neb. 371, 58 N. W. 100; *Land Mortgage Co. v. Gillam,* 49 S. C. 345, 26 S. E. 990, 29 S. E. 203; *Steele v. Butler,* (Tex. Civ. App.) 227 S. W. 506; 2 C. J. 446.)

At least there was an apparent agency and the Insurance Company is estopped to deny it. (2 C. J. 461.) A written stipulation in a contract that an agency is not intended is not binding on third parties if they have been led to believe that an agency exists. (*Jensen v. Lewis Inv. Co.,* 39 Neb. 371, 58 N. W. 100.) Consequently the contract of the Insurance Company and the Investment Company specifying that "in all transactions arising out of the performance

of this agreement, the Correspondent in no instance is to act or shall be authorized to act as agent of the Company,'' is not controlling herein.

Likewise the fact that Harding in his original application for a loan named the Investment Company his agent for the purpose of obtaining it is not controlling on the question of the Insurance Company's agency in procuring an extension. (*McLean v. Ficke, supra; Larson v. Lombard, supra; N. E. Mortgage Co. v. Addison,* 15 Neb. 335, 18 N. W. 76.)

While it is true that where there is a conflict in the evidence a finding of the trial court will not be disturbed, on the other hand, if the evidence does not support the finding or if a different finding or conclusion is necessitated by the proper application of the pertinent law, the findings made by the trial court are not binding upon this court.

The Investment Company, then, being the agent of the Insurance Company in regard to the renewal transaction, its knowledge that the renewal contract was given conditionally was imputed to the Insurance Company. That being true, the Insurance Company had control of the commission mortgage even though given to the Investment Company, and the condition in the tender, requiring it to be released, was not improper.

Even if we were to accept the contention of the Insurance Company and the Investment Company that there was no agency relationship between them, the tender was good because it was in no way objected to. C. S., sec. 5672, provides that all objections to the mode of an offer of performance which the person making the offer might obviate are waived by the creditor if not then stated. (*Moody v. Crane,* 34 Ida. 117, 199 Pac. 652.) Construing a statute identical to this, the supreme court of California has held that the ''mode'' of performance includes unwarranted conditions in the tender which the person tendering, upon objections by the creditor, might remove, and that if objections to such conditions are not raised by the creditor, they are deemed to be waived. (*Boise Lumber Co. v.*

*Independent School District*, 36 Ida. 778, 214 Pac. 143; *Kofoed v. Gordon*, 122 Cal. 314, 54 Pac. 1115; *Wadleigh v. Phelps*, 149 Cal. 627, 87 Pac. 93; *Cates v. McNeil*, 169 Cal. 697, 147 Pac. 944; *Lockhart v. McDougall*, 190 Cal. 308, 212 Pac. 1; *Harder v. Allred*, 61 Cal. App. 394, 214 Pac. 1017; *Hind v. Oriental Products Co.*, 195 Cal. 655, 235 Pac. 438; *Latimer v. Capay Land Co.*, 137 Cal. 286, 70 Pac. 82; *Murphy v. Bridge*, 68 Cal. App. 383, 229 Pac. 710.)

There is no showing that the conditions were so impossible of performance by the Insurance Company as to indicate bad faith on the part of the Hardings.

The reason for this rule is that if the person tendering in good faith makes a mistake as to his rights, he should be given an opportunity to withdraw from his position before being subjected to additional costs and expenses at the suit of a creditor who has chosen to ignore him.

▇▇▇▇▇ Appellants Harding assign as error the refusal of the court to enter judgment for $100, the amount of the penalty prescribed by C. S., sec. 6369, for failure to release a mortgage which has been satisfied. This statute is penal and should be strictly construed. The facts herein obviously indicate a substantial controversy and hence the penalty should not be imposed. (*Murphree v. Farmers' Bank*, 16 Ala. App. 340, 77 So. 934; *Blount v. Aetna Bldg. Assn.*, 97 Kan. 77, 154 Pac. 222; *Smith v. Colson*, 31 Okl. 703, 123 Pac. 149; *Malarkey v. O'Leary*, 34 Or. 493, 56 Pac. 521; *Kronebusch v. Raumin*, 6 Dak. 243, 42 N. W. 656.) There is a different situation here than that considered in *Blackfoot Bank v. Crisler*, 20 Ida. 379, 118 Pac. 775.

The findings and conclusions of the trial court leading to its decree that the commission mortgage could not be foreclosed are amply sustained by the evidence and its judgment to this effect is sustained.

The judgment allowing foreclosure of the Insurance Company mortgage is reversed and the cause remanded, with instructions to the trial court to enter judgment in connection with the foreclosure thereof in favor of the appel-

lants Harding conditioned upon payment by the Hardings of the principal, and interest thereon, to the due date thereof, within 40 days from the date of the receipt of the *remittitur* by the clerk of the trial court.

Costs awarded to the appellants Harding.

Budge, Lee, Varian and McNaughton, JJ., concur.

## ON PETITION FOR REHEARING.

### (April 23, 1930.)

GIVENS, C. J.—The petition for rehearing makes four points: First, it is urged that the court went beyond its duties as an appellate court in rejecting the finding of the trial court that the Investment Company was not the agent of the Insurance Company, and, in effect, making a finding of its own that an agency existed. Secondly, it is urged that the court erred in its conclusion that the Investment Company was the agent for the Insurance Company. Thirdly, petitioner contends that the court erred in concluding that the Insurance Company was responsible for the particular acts of the Investment Company in question, even though it be conceded that the Investment Company was the agent for the Insurance Company in the renewal negotiations.

With reference to the question of agency, there was no substantial conflict in the evidence. In brief the evidence established:

(1) That the Investment Company and the Insurance Company had entered into an agreement in which it was expressly provided that there should be no agency relationship between them.

(2) That in the applications for a loan which Harding signed, it was expressly provided that the Investment Company should be his agent for the purpose of procuring it, and

(3) A certain course of dealing set out in the opinion concerning which there is no substantial conflict in the evidence.

From these facts the trial court concluded as a matter of law that the Investment Company was not in this instance an agent for the Insurance Company. In reaching a different conclusion on the basis of these facts this court has not trespassed on the prerogatives of the trial court. The question of agency, where there is no substantial conflict in the evidence, is one of law. (2 C. J. 961.) That the trial court considered the question here to be one of law is indicated by reference to the conclusions of law in which No. 1 is as follows:

"That with respect to the transactions in the Findings of Fact set forth, the Investment Co. was not the agent of the Insurance Co."

Assuredly if the question is one of law, this court is not bound by a conclusion of the trial court.

The second point raises the question of whether this court correctly determined, on the basis of the fact set out above, that the Investment Company was the agent for the Insurance Company. In this connection petitioner relies chiefly on one paragraph from the three loan applications submitted by Harding to the Investment Company as follows:

"The Home Investment & Savings Co. of Salt Lake City, Utah, is my agent to procure the above loan; principal and interest payable at such place as the lender may direct; to receive the avails there for me; to receive and transmit for me my funds for the payment of interest or of principal on said loan as it may from any cause from time to time become due and payable."

This is by no means conclusive on the question of agency. The rule, well supported by authority, is stated in 2 C. J. 447 as follows:

"Thus the fact that the application for the loan recites that the intermediary is the agent of the borrower is not controlling if the facts and circumstances are such as to

create an agency in behalf of the lender as a matter of law.''

The rule stated in the American Law Institute Restatement as quoted in *Burlington Sav. Bank v. Prudential Ins. Co.,* 206 Iowa, 475, 218 S. W. 951, is as follows:

''Where a person is unquestionably the agent of one party or the other in a transaction, but there is a dispute as to which party is his principal, the question is to be decided by a reference to all the facts and circumstances of the case. A proper interpretation of the facts may indicate that he was agent of one party although the contract recites or he testifies that he was the agent of the other.''

Each case must be decided on its own facts, and from a consideration of all the facts. While we have found no case precisely in point, we believe that the following cases, in addition to those cited in the opinion, support the conclusion we have reached: *Youtsey v. Union Central Life Ins. Co.,* 191 Iowa, 1120, 183 N. W. 476; *Kraus v. Dowell,* 119 Wash. 90, 204 Pac. 795; *Stephens v. Parker,* 121 Wash. 134, 208 Pac. 6; *Burlington Sav. Bank v. Prudential Ins. Co.,* 207 Iowa, 808, 221 N. W. 796, 798, 223 N. W. 520.

Petitioner further contends that even if the Investment Company was the agent for the Insurance Company, the latter cannot be held responsible for the act of the Investment Company in taking a commission mortgage and recording it contrary to the expressed orders of Harding. It is urged that such an act was outside the Investment Company's authority even if this authority be as inclusive as Harding contends. We are unable to agree. The Insurance Company had knowledge of the fact that the Investment Company was taking commission mortgages in connection with loans as a reimbursement for its services. The loans and the commission mortgage were a part of the same transaction and so they must have appeared to Harding. If the Investment Company was authorized to reimburse itself in this way, then the acts of which Harding complains were within the scope of its authority. If the

Investment Company was not so authorized, then the Insurance Company is estopped to deny it. (2 C. J. 461.)

The fourth point raised by the petition for rehearing relates to the question of tender. It is urged that the tender was no real tender but merely an offer to pay. C. S., sec. 8049, provides that an offer in writing to pay a particular sum of money is, if not accepted, equivalent to the actual tender of the money.

It is further urged that the Insurance Company did not waive the conditions in the Hardings' tender (C. S., sec. 5672), first, because the Insurance Company had no opportunity to object, and secondly, because under the provisions of this section of the statute only those conditions are waived which could be obviated.

The offer of tender was mailed at Twin Falls on March 21st, reached Gleed Miller, a local representative of the Insurance Company, on March 23d, reached the Investment Company at Salt Lake on March 24th, and the Insurance Company at New York on March 26th. Conceding that the time for making objections was short, it was not so short that objections could not have been made if the Insurance Company had so wished. This contention becomes still less tenable in view of our conclusion that the Investment Company was the Insurance Company's agent.

We are unable to follow petitioner in his contention that the conditions in the tender relating to the place of payment and the release of the commission mortgage could not have been obviated by the Hardings if objections thereto had been seasonably made.

Certainly they could have agreed to make their payment at Salt Lake, instead of Twin Falls, or at any other place designated by the Insurance Company.

Likewise, had they been so inclined they could have withdrawn the condition relating to the release of the commission mortgage. It is not for us to say that they would not have done this simply because the record indicates, no objection to the tender having been made, that they were not prepared to do it.

Petition for rehearing denied.